UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAMO RUZNIC,<br><br>                Plaintiff,<br><br>    v.<br><br>CORIZON MEDICAL SERVICES; REBEKAH HAGGARD; RONA SIEGERT; and UNNAMED AND UNKNOWN INDIVIDUALS,<br><br>                Defendants. | Case No. 1:19-cv-00383-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

       The Clerk of Court conditionally filed Plaintiff Ramo Ruznic's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**1.    Screening Requirement**

       The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

3. **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution. Plaintiff asserts that he has been denied adequate medical care in prison, in violation of the Eighth Amendment to the United States Constitution. *See Compl.*, Dkt. 3, at 1.

For over a year, Plaintiff has been experiencing numbness and pain through the right side of his body. Prison medical providers—"without any testing to support a finding"—diagnosed the problem as "an adverse effect of [Plaintiff's] diabetes" and informed Plaintiff "that there was nothing wrong with him." *Id*. at 3. Medical providers have prescribed Plaintiff "light doses of pain medication" that have not been effective. *Id*.

Plaintiff continued to seek medical treatment for his "undiagnosed" condition. He did not receive additional medical treatment even though the provided treatment was not working. Plaintiff sought a referral to an outside specialist, but Defendant Dr. Haggard referred him back to his treating providers. *Id*. at 3–5. He also sought treatment through concern forms and grievances, but Defendant Siegert—who apparently answered Plaintiff's grievances on the topic—did not intervene to ensure that Plaintiff received adequate medical treatment. *Id*. at 5.

Plaintiff sues Defendants Haggard and Siegert. He also sues Corizon, Inc., the private company providing medical care to Idaho prisoners under contract with the IDOC. Finally, Plaintiff attempts to name unidentified individuals as Defendants.

4. **Standards of Law**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472

(2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09. A plaintiff may also seek injunctive

relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a municipality (local governmental entity) or a private entity performing a government function—such as Corizon—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with "deliberate indifference...only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison

official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. And if medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of

serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

Defendants who were involved in reviewing prisoners' complaints about medical treatment may or may not have liability for the constitutional violations complained of regarding actual grievances they processed, depending on (1) the type and timing of the problem complained of and (2) the role of the defendant in the process. For example, a medical supervisor cannot cause or contribute to a completed constitutional violation that occurred in the past and that is not remediable by any action the reviewer might take. *See,*

*e.g., George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

It may be, however, that the alleged constitutional violation is ongoing, and a defendant reviewing the prisoner's medical complaints may have the duty and authority to review the propriety of the medical treatment and to remedy the alleged deficiencies—not by providing medical care to the prisoner themselves, but by obtaining the answer to whether the medical care was proper and directing a remedy to be implemented. In such a case, if the medical treatment is constitutionally inadequate, the reviewing defendants may be subject to § 1983 liability because they knew of an "ongoing constitutional violation"—the constitutionally deficient medical care—and would have had "the authority and opportunity to prevent the ongoing violation," but did not intervene to remedy the situation. *See Herrera v. Hall*, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor*, 880 F.2d at 1045).

In sum, where claims are asserted against individuals who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's diagnosis or treatment. *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156 (N.D. Cal. 2014). Rather, the question is whether the plaintiff has provided sufficient facts from which a factfinder could conclude that the supervisor's knowing failure to address the treating provider's deficient care interfered with Plaintiff's medical treatment. *See id.* Of course, if the prescribed medical treatment was not constitutionally deficient,

then the medical supervisor cannot have violated the Eighth Amendment by not acting to alter that treatment.

5.  **Discussion**

Plaintiff's Complaint, liberally construed, appears to state colorable Eighth Amendment claims against Defendants Corizon, Haggard, and Siegert. Plaintiff alleges that his treating providers diagnosed him with complications from diabetes—and continued with an ineffective course of treatment for over a year—without any testing. The Complaint also alleges that Corizon has a policy of referring inmates' request for specialists back to the treating provider, in an attempt to "prolong giving help to those in need." *Compl.* at 5. These allegations give rise to a reasonable inference that Corizon has a policy or custom amounting to deliberate indifference to Plaintiff's serious medical needs.

The Complaint also plausibly alleges that Defendants Haggard and Siegert—the supervisory defendants—knowingly failed to address the treating providers' deficient medical care. *See Gonzalez*, 67 F. Supp. 3d at 1156. Therefore, in addition to Corizon, Plaintiff may proceed against these two individual defendants.

However, the Court cannot effect service on the unidentified defendants. Flexibility in naming unknown defendants is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Therefore, if the true identity of any of the unidentified defendants comes to light during

discovery, Plaintiff may move to amend the Complaint to include claims against those Defendants.[1]

## 6. Request for Appointment of Counsel

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than

---

[1] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

7. **Conclusion**

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that Plaintiff's Eighth Amendment claims are plausible—meaning that they will not be summarily dismissed at this time but should proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may file a motion for dismissal on any basis other than failure to state a claim.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) prison officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by incarceration records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting defenses such as non-exhaustion or entitlement to qualified immunity. In such instances, the parties may be required to exchange limited information and documents directly relevant to the defense at issue.

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED.

2. Plaintiff may proceed on his Eighth Amendment claims against the identified Defendants. Defendants will be allowed to waive service of

---

[2] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A.

summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

a. **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendant Siegert.

b. **Kevin West and Dylan Eaton,** Parsons Behle & Latimer, 800 W. Main Street, Suite 1300, Boise, Idaho, 83702, on behalf of Defendants Corizon and Haggard.

3. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

4. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an

additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

5. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

6. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

7. Dispositive motions must be filed no later than 300 days after entry of this Order.

8. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

9. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District

of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

10. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

12. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

13. Pursuant to General Order 324, this action is hereby returned to the Clerk of

Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: December 9, 2019

B. Lynn Winmill
U.S. District Court Judge