UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAMO RUZNIC,<br><br>        Plaintiff,<br><br>        v.<br><br>CORIZON MEDICAL SERVICES;<br>REBEKAH HAGGARD; RONA<br>SIEGERT; and UNNAMED AND<br>UNKNOWN DEFENDANTS,<br><br>        Defendants. | Case No. 1:19-cv-00383-DCN<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Ramo Ruznic's Motion for Preliminary Injunction. Dkt. 19. The Court also considers Defendant's Rona Siegert's Motion to Dismiss. Dkt. 25. After reviewing the record and the briefs, the Court finds the facts and legal arguments are adequately presented. Because oral argument would not significantly aid in this decision and to avoid further delay, the Court decides on the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d) (1)(B). For the reasons set forth below, the Court DENIES Ruznic's Motion for Preliminary Injunction and GRANTS Siegert's Motion to Dismiss.

## II. BACKGROUND

Plaintiff Ramo Ruznic is incarcerated by the Idaho Department of Corrections at the Idaho State Correctional Institute. On October 3, 2019, Ruznic filed a *pro se* Complaint alleging violation of 42 U.S.C. § 1983.

MEMORANDUM DECISION AND ORDER - 1

On December 9, 2019, United States District Court Judge B. Lynn Winmill issued an Initial Review Screening Order permitting Ruznic to proceed on his Eighth Amendment claims. Dkt. 8. Accordingly, Defendants Corizon and Rebekah Haggard answered on February 7, 2020. Dkt. 18. Defendant Siegert answered on February 25, 2020. Dkt. 20. Also on February 25, 2020, Ruznic filed a Motion for Preliminary Injunction. Dkt. 19. The case was returned to the Clerk of the Court for random civil assignment and transferred to United States Magistrate Judge Candy W. Dale, who then transferred it to the undersigned when the parties failed to consent to a magistrate judge in a timely manner. Dkt. 8; Dkt. 22.

Defendants Corizon, Haggard, and Siegert responded to Ruznic's Motion for Preliminary Injunction on March 17, 2020. Dkt. 23; Dkt. 24. Defendant Siegert filed a Motion to Dismiss on March 26, 2020. Dkt. 25. On April 2, 2020, Ruznic replied to Siegert's response in opposition to his Motion for Preliminary Injunction. Dkt. 28. Ruznic did not reply to Defendants Corizon and Haggard's response. Nor did Ruznic respond to Siegert's Motion to Dismiss.

Since 2008, Ruznic has been diagnosed with type II diabetes and experiences blood pressure instability, epilepsy, hearing loss, kidney issues, mental health difficulties, and a locked knee. Dkt. 23-1, at ¶ 7. Ruznic has felt numbness and pain in his right leg, arm, and torso for more than a year and he brought these complaints to Corizon Medical Staff beginning in December 2018. Dkt. 3, at 3. Ruznic states since that time he has been seen by various Corizon medical professionals who have all attributed his symptoms to his diabetes. *Id* at 4. Ruznic began requesting off site specialists in January 2019. *Id.*

Ruznic was seen by Corizon routinely starting on December 7, 2018, when a medical order was placed for twice daily glucose monitoring to chart his blood sugar and treat his diabetes. Dkt. 23-1, at ¶ 8. Twice more in December Ruznic was seen for pain, numbness, and tingling. Dkt. 23-1, at ¶ 9; Dkt. 24-1, at 11. Ruznic was seen four more times in January to investigate and treat his symptoms.  Dkt. 24, at 5-6. During this time, Ruznic had a blood panel and leg x-rays to investigate other possible causes of the symptoms. Dkt. 23-1, at ¶ 9. Also, in January, Ruznic missed an insulin shot. *Id.* at ¶ 11. While Ruznic reported pain, medical professionals recorded that he was able to walk, stand, and sit without difficulty. *Id.*

In February of 2019, Ruznic had an x-ray of his back and abdomen taken, as well as a rheumatoid arthritis panel to investigate other potential medical causes for his lingering symptoms. *Id.* at ¶¶ 12-13. Ruznic reported not taking his daily prescribed medication for the pain. *Id.* at ¶ 12. Ruznic was seen again multiple times in March of 2019. On one of these occasions, Ruznic was evaluated by a physical therapist and begin physical therapy to assist with his symptoms. *Id.* at ¶ 14. The record reflects responsive, continued, and varied medical care provided by Corizon Medical Professionals from March 2019 through February of 2020. Dkt. 24-1, at 7-98.

Ruznic filed his Motion for Preliminary Injunction against Corizon Medical Servies, MD Rebekah Haggard, and Rona Siegert seeking adequate medical care to treat his pain and suffering. Dkt. 19, at 1. Defendants oppose the motion based on existing adequate treatment provision at the prison. Dkt. 23, at 11; Dkt. 24, at 3. Defendant Corizon and Haggard also assert Ruznic has contributed to his own symptoms with his lack of treatment

MEMORANDUM DECISION AND ORDER - 3

compliance and that Ruznic's reported pain is in contradiction with medical staff's observations. Dkt. 23, at 8-11.[1]

### III. LEGAL STANDARD

A preliminary injunction's purpose is to prevent irreparable harm that occurs before a court can render a decision on the merits. A preliminary injunction "is an extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Preliminary injunctions take two forms, prohibitory or mandatory. "A prohibitory injunction stops a party from taking action to preserve the status quo" and a mandatory injunction orders a party to take action and is generally disfavored because it extends "well beyond simply maintaining the status quo . . . ." *Marlyn Nutraceurticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (internal alterations and quotation marks omitted).

Generally, injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases where the injury complained of is capable of compensation in damages." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (quoting *Clune v. Publishers' Ass'n of New York City*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963), *aff'd*, 314 F.2d 343 (2d Cir. 1963)). "Whether to grant or deny a . . . preliminary injunction is a matter within the court's discretion." *Koller v. Brown*, 224 F. Supp. 3d 871, 875 (N.D. Cal. 2016).

A party seeking a preliminary injunction must establish: (1) a likelihood of success

---

[1] As noted, Ruznic never replied to Defendants Corizon and Haggard's responsive pleading.

on the merits; (2) that the moving party will suffer irreparable harm absent a preliminary injunction; (3) the balance of equities weighs in favor of the moving party; and (4) an injunction will serve the public's interest. *Winter*, 555 U.S. at 20; *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

In cases like this one, which are governed by the Prison Litigation Reform Act ("PLRA"), "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). A court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id*. The Ninth Circuit held that although the PLRA affects the type of prospective injunctive relief available, "it has not substantially changed the threshold findings and standard required to justify an injunction." *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir.2001) (granting prospective and retrospective relief as least restrictive means to correct constitutional violations).

The Court will address each element in turn.

## IV. ANALYSIS

### A. Likelihood of Success on the Merits

To grant a mandatory injunction "to provide specific medical care," a Plaintiff must establish likely success on the merits of his Eighth Amendment deliberate indifference claim. *McGiboney v. Corizon*, No. 1:18-CV-00529-DCN, 2019 WL 3048339, at *7 (D. Idaho July 11, 2019), *amended by* No. 4:18-CV-00529-DCN, 2020 WL 1666805 (D. Idaho Apr. 3, 2020). In this case, Ruznic claims "he has been denied care for a serious medical

need," which will result in irreparable harm in violation of his Eighth Amendment rights because his injuries are "life debilitating." Dkt. 19, at 4. Defendants respond that the treatment records show they have provided responsive, routine, and adequate health care to Ruznic. Dkt. 23; Dkt. 24. Defendant Corizon further contends that Ruznic's non-compliance with treatment could amount to a refusal of care, negating an indifference claim. Dkt. 23, at 11-12.

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment, including deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). It is important to note that mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (finding that a misdiagnosis and subsequent treatment for that misdiagnosis did not indicate undue delay or interference, nor deliberate indifference). Similarly, a prisoner's and a prison medical professional's difference of opinion concerning medical treatment cannot establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004).

The Ninth Circuit deliberate indifference test requires that Plaintiff show 1) a "serious medical need" by proving that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'" and 2) the defendant was deliberately indifferent to that serious medical need or pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104).

The first prong of the test regarding the serious medical need has not been

specifically plead by Ruznic in this case and is too speculative to proceed. In the Ninth Circuit, "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 688, 674 (9th Cir. 1988). Ruznic claims that "he may never be able to function normally again," but fails to include facts to support this contention. Dkt. 19, at 4. Ruznic has not outlined symptoms, medically significant events, or other facts to show significant injury is likely in the future or that he is experiencing unnecessary and wanton pain at the present time. Without discussing facts relevant to likely significant injury or unnecessary and wanton pain, Ruznic cannot establish a serious medical need. Also, Ruznic's aforementioned claim includes the future conditional "may" and is thus too speculative to form a finding that significant injury is *likely*.

Defendants Corizon and Doctor Haggard actually aid Ruznic in this regard. In their briefing, Corizon and Dr. Haggard point out that the Ninth Circuit has held that diabetes is a serious medical need. *Lolli v. County of Orange*, 351 F.3d 410, 419-20 (9th Cir. 2003). They summarize that Ruznic has had diabetes since 2008 and additionally experiences "high and low blood pressure, epilepsy, hearing loss, kidney problems, mental illness, and a locked knee" as well as vision complications resulting from his diabetes. Dkt. 23, at 7; Dkt. 23-1, at ¶ 7. It is clear that while Ruznic has not specifically plead his serious medical need, he suffers from one.

Insofar as the Court finds Ruznic has a serious medical need, this Court looks next to the second prong of the test. Deliberate "indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104. Ruznic claims that his Eighth Amendment rights were violated in this case because "he has been denied care." Dkt. 19, at 4.

The Defendants point to a record replete with treatment provisions on a near monthly basis and often multiple times a month from December 2018, to February 2020. Dkt. 23-2; Dkt. 24-1. These provisions include visits to the chronic care clinic, physical therapy, x-rays, medication adjustments, diabetic shoes, blood panels, and glucose monitoring twice a day for a year. Dkt. 23, at 7-8; Dkt. 23-1, at ¶¶ 7-9.

All of the evidence before the Court suggests care has been consistent and adequate, negating a deliberate indifference argument. *See McGiboney,* 2019 WL 3048339, at *16 (stating that gaps and inconsistencies in treatment suggest likely success on a claim for deliberate indifference to serious medical needs.) Rather than reflecting a denial or delay of care, Ruznic's care much more closely resembles a disagreement regarding the direction of care. Disagreement regarding treatment, however, does not warrant a finding of deliberate indifference. *Toguchi*, 391 F.3d at 1059-60.

Moreover, the record shows Ruznic has missed appointments and medications through no fault of the Defendants, potentially adding to his own pain and debilitation. Dkt. 23-1 ¶¶ 11, 17, 19, 24. There is also evidence in the record showing that while Ruznic reported numbness, severe leg pain, and inability to walk medical personal documented him walking without issue and exercising at the gym on the same day (as the reported complaints). Dkt. 23-1 ¶¶ 11, 16, 22, 23. The conflicting evidence and self-imposed failures to follow medical care guidelines undercut Ruznic's argument. Here Ruznic has not

provided evidence that prison guards denied, delayed, or interfered with access to care or interfered with his prescribed treatment plan. Nor has Ruznic shown the Corizon medical professionals' response towards his serious medical need was deliberately indifferent.

As Ruznic has not concretely pled a serious medical need, he has not met his burden in proving the first prong one a deliberate indifference claim. Assuming *arguendo* he had, he still has not shown that Defendants were deliberately indifferent to his medical needs. Taken together, the Court finds that Ruznic has not met his burden regarding the first element necessary for a preliminary injunction: showing likely success on the merits of his deliberate indifference claim. While the Court's finding here is dispositive of the preliminary injunction issue,[2] it will briefly review the remaining elements.

## B. Irreparable Injury

Ruznic has not established that he would suffer irreparable harm in the absence of a preliminary injunction. A preliminary injunction is not granted unless a Plaintiff shows he is likely to experience irreparable injury absent the injunction. *Granny Goose Goods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974). As noted, Ruznic alleges in his complaint that he will suffer irreparable harm that is "life debilitating" and that "he may never be able to function normally again." Dkt. 19, at 4. Critically, however, Ruznic has not provided evidence to support these conclusions.

---

[2] *Cox v. Corizon Corr. Health Servs.*, No. 1:18-CV-00008-BLW, 2019 WL 956793, at *1 (D. Idaho Feb. 27, 2019) ("Because the first element—likelihood of success on the merits—is 'a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, [a district court] need not consider the remaining three.'") (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)).

As Defendant Siegert correctly explains, pain may be an issue despite the evolving treatment provided by prison medical staff and pain alone is insufficient to show irreparable harm. Dkt. 24, at 14.

From the information before the Court, it appears Ruznic is experiencing complications as a result of his diabetes and that this has caused him pain—as the medical record suggests. Dkt. 23-1, ¶¶ 5,7, 8. For these exact reasons, however, medical providers at the prison have developed a treatment plan with regular care to minimize the negative symptoms of Ruznic's diabetes. The evidence provided by Ruznic is not sufficient to show that unless there is an injunction, Plaintiff will face irreparable harm. The second prong of this inquiry has not been met, supporting the Court's conclusion that the motion for mandatory injunction should be denied.

## C. Balance of the Equities

A Plaintiff must also establish that the balance of equities tip in his favor for a court to grant an injunction. *Winter*, 555 U.S. at 20 (2008). This test requires weighing the potential effect of granting or denying an injunction on all of the parties and a court "should pay particular regard for the public consequences." *Id.* "Federal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which [the courts] are ill-equipped." *Bruce v. Yist*, 351 F.3d 1283, 1290 (9th Cir. 2003).

Ruznic argues that if the injunction is denied, he may lose functioning in his lower extremities, but if the injunction is granted, the hardships Corizon, Haggard, and Siegert

will face amounts to "business as usual" because providing inmates with adequate health care is part of their employment and constitutional obligations. Dkt. 19, at 5-4.

Defendant Siegert responded by noting that without evidence of deliberate indifference, there is no hardship for Ruznic that requires balancing. Dkt. 24, at 15. Further, granting the injunction to take Ruznic to a specialist "could cause a substantial burden" by "unduly subject[ing] prison officials and medical personnel to premature judicial oversight and expense." Dkt. 24, at 15.

The Court agrees with Defendant Siegert that the balance of equities slightly favors denial of the injunction. While Ruznic is correct that the prison is obligated to provide adequate medical care, the record shows adequate care has been provided thus far. Weighing the interests of Ruznic obtaining a second opinion with impermissibly expanding the scope of applicable care for all prisoners to get a second opinion upon disagreement with prison health officials favors denying the injunction. Ruznic getting a second opinion veers beyond balancing equities to favoring Ruznic, potentially at the expense of the public. Granting the injunction on this basis goes beyond the scope of the Court. This prong of the test supports the denial of the injunction.

### D. Public Interest

If an injunction is to be granted, it must be in the public interest. *Winter*, 555 U.S. at 20 (2008). It is always in the public's interest to prevent a violation of constitutional rights. *Melendres v. Arpaio*, 695 F. 3d 990, 1002 (9th Cir. 2012). However, as the Defendant's point out, without evidence of a constitutional violation, granting an injunction would not be in the public's interest. Dkt. 23, at 16. Allowing prison medical staff and

MEMORANDUM DECISION AND ORDER - 11

officials to make decisions in their field of expertise without judicial interference when there is no evidence of a constitutional violation supports efficiency in the prison system's treatment provision as well as judicial economy. The public interest prong supports the denial of the requested mandatory injunction.

### E.  PLRA

The PLRA provides that injunctive relief is to be narrowly drawn to extend no further than necessary to correct the harm, further supporting the denial of the injunction.

This Court has determined that the Plaintiff has not shown irreparable harm and the Court cannot correct a harm that has not been proven. Granting an injunction in this case would impermissibly intrude upon the medical and penal institutions that are much more equipped to manage Ruznic's health issues.

Finally, granting Ruznic's request for a second opinion could expand the available care for all prisoners who disagree with their healthcare treatment, broadening applicable care for inmates across the board. Because the PLRA requires narrow injunctive relief and Ruznic has not established the preceding test elements for the injunction, this Court denies his request for mandatory injunctive relief.

### F.  Additional Motion to Dismiss

Defendant Siegert has filed a Motion to Dismiss and, under the circumstances the Court does not need to reach the merits of the motion as procedural grounds exist for granting it outright. Siegert filed a Motion to Dismiss on March 26, 2020. Dkt. 25. On March 27, 2020, the Clerk of the Court sent Ruznic the standard Notice to *pro se* litigants

outlining what the Court required him to do.[3] Dkt. 26. The Notice explained what a Motion

to Dismiss is and how and when to respond. The Notice also included the following

warning:

> **You are warned** that if you do not file your response opposing the motion
> within 21 days (or such other time period set by the Court), the Court will
> consider the facts provided by the moving party as undisputed and **may
> grant the motion** based on the record before it, or it **may dismiss your
> entire case for failure to prosecute** (abandonment of your case). *See* Local
> Rule 7.1(e)(2); Fed. R. Civ. P. 41(b).

Dkt. 26, at 2 (emphasis in original). To date, Ruznic has not filed anything with the Court

in response to Siegert's Motion to Dismiss. Ruznic could have requested more time to

respond, though he has not done so, and his time to respond has elapsed. Accordingly,

pursuant to this Court's Notice to Ruznic, his failure to timely respond to Siegert's Motion

to Dismiss is deemed acquiescence and the Court must grant judgment in Siegert's favor.

Even if the procedural grounds for dismissal were not present here, there are

independent substantive bases for granting Siegert's Motion to Dismiss. A claim against a

prison official for violating the Eighth Amendment under 42 U.S.C. § 1983 is only

cognizable if his or her "acts or omissions [are] sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Specific facts have not been alleged by Plaintiff Ruznic to establish a cognizable deliberate

indifference claim regarding Defendant Siegert. Accordingly, the Motion is GRANTED.

---

[3] In *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir. 1988), the Ninth Circuit held that prisoners (and others) must receive fair notice of the requirements of Rule 56. In this Court—as in courts across the nation—this notice is a standard form sent to all *pro se* litigants (including prisoners) explaining Rule 56 and what they must do when a motion under Rule 56 has been filed.

MEMORANDUM DECISION AND ORDER - 13

## V. ORDER

For the reasons stated herein, IT IS HEREBY ORDERED:

1.     Plaintiff's Ruznic's Motion for Preliminary Injunction (Dkt. 19) is DENIED.

2.     Defendant Siegert's Motion to Dismiss (Dkt. 25-1) is GRANTED. The Clerk

of the Court shall dismiss Defendant Siegert as a defendant in this case.

3.     The deadlines set forth in Judge Winmill's original screening order (Dkt. 8,

at 15-18) shall continue to govern this case moving forward.

DATED: August 18, 2020

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 14